DOUGLAS *v.* SCHNEIDER

5-3764                                       399 S. W. 2d 663

Opinion Delivered March 7, 1966

*Nell Powell Wright,* for appellant.

*Terry M. Poynter, Roy E. Danuser* and *Frank J. Huckaba,* for appellee.

CARLETON HARRIS, Chief Justice. The facts in this case are somewhat unusual. In 1948, Mrs. Laura B. Parker, of Baxter County, owned all of the lands in question in this litigation. A creek ran through this property, and Lee Douglas and wife, appellants herein, desired to purchase that portion of the lands east of the creek, and also enough land west of the creek to enable appellants to enclose their property without running

the risk that the fence would be washed away by a rise. A survey was made by the County Surveyor, establishing a boundary on the west side of the creek.[1] On July 22, 1948, Mrs. Parker executed a deed to Mr. and Mrs. Douglas, conveying the land in question to them, and describing the west boundary in accordance with the survey that had been made. Thereafter, in 1951, Mrs. Parker offered the remainder of her land to Mr. Douglas, but he was financially unable to purchase it. Fred Van Schaik, one of the appellees herein, while visiting in Baxter County, and staying in a motel owned by Robert Badsky, a neighbor of appellant, contracted through a real estate broker to buy the remaining lands owned by Mrs. Parker. Badsky informed Van Schaik that Douglas could obtain the lands for him at a lesser price than would be charged by the broker, and Van Schaik cancelled his agreement. Badsky then contacted Mr. Douglas, and he, in turn, got in touch with Mrs. Parker. On August 29, 1951, Mrs. Parker executed a deed conveying her remaining lands to appellants. Thereafter, on September 22, 1951, appellants conveyed the latter property to Van Schaik and wife, using the same description under which they received the property from Mrs. Parker.

In April, 1958, Van Schaik and wife agreed to sell the lands to Wesley W. Schneider and wife, also appellees herein. At that time, a mistake in the description in the deed (Douglas to Van Schaik) was discovered. To correct the mistake, the Douglases executed a correction deed to the Van Schaiks on April 23, 1958. However, this deed likewise was erroneous, and specified the creek as the east boundary, rather than following the surveyed line.[2] There is no explanation of why this mistake was made, other than it simply appears that

[1] This survey line followed the meandering of the creek, and ranged from several feet to fifty feet from the west bank of the creek at the time of the survey.

[2] It was also erroneous in that it described the land to be located in the northeast quarter of the northeast quarter, instead of the northeast quarter of the northwest quarter. The deed was reformed by the court to correct this error, and that is not at issue here.

the deed was not read at the time it was signed.[3] The deed was placed of record, and the abstract was brought up to date. An attorney then examined the abstract, and gave Mr. Schneider a title opinion, reflecting merchantable title in the Van Schaiks to the lands described in the Douglas to Van Schaik correction deed of April 23. The Schneiders then completed the purchase, and received the Van Schaiks' deed on April 25. The description in the correction deed executed by the Douglases is identical with the description in the Van Schaiks' deed to the Schneiders. In July, 1958, Douglas discovered the mistake, and discussed this with a real estate broker, Jim Gibson, who had handled the sale from the Van Schaiks to the Schneiders. After investigation, Gibson agreed that a mistake had been made. Thereafter, the Douglases signed a second correction deed to the Van Schaiks, reforming the eastern boundary of the Van Schaik-Schneider tract to conform to the survey line. Later in the month, the Van Schaiks signed a deed to the Schneiders, containing the same description. The testimony concerning circumstances connected with the related events is rather conflicting. At any rate, on March 15, 1965, the Schneiders and Van Schaiks instituted suit, alleging that the Schneiders owned the land, having acquired it from the Van Schaiks, and that the July correction deed from the Douglases to the Van Schaiks was executed without the consent of the Schneiders; that the correction deed of July 12, 1958, from the Van Schaiks to the Schneiders was never delivered, was executed at a time when the Schneiders were not within the state, and was executed in blank by the Van Schaiks; that this deed was a nullity, and the complaint prayed that this deed be set aside as a cloud on the Schneiders' title. Mr. and Mrs. Douglas answered, denying the allegations, and asking that the correction deed of April 23, 1958, to Van Schaik, and the deed of April 25, 1958, from Van Schaik to Schneider be cancelled. The case proceeded to trial, and at the conclusion of the evidence, the Chancellor held for appellees, and granted

[3]Mr. Douglas said, "I never read it. I didn't have my glasses with me * * *."

the relief prayed. From the decree so entered, appellants bring this appeal.

It is clear that Mr. and Mrs. Douglas had no intention of conveying to the Van Schaiks any lands other than those conveyed by the Parker deed of August 29, 1951, i. e., appellants did not intend to include any of the land which had been purchased for their own use in 1948. In fact, it is not argued otherwise. However, Van Schaik testified that he thought he was buying to "the creek," and he intended his conveyance to Schneider to show the creek as the boundary. As to the July, 1958, correction deed from the Douglases to him, the witness stated that he did not know whether Douglas ever delivered him a correction deed or not, but he did say that he knew he was not advised that the boundary was being changed, and that he signed the correction deed to Schneider with the assurance that the creek was the east boundary of the property; that this assurance was given by either Mr. Douglas, or Mr. Gibson. He could not state definitely, but was under the impression that he might have signed this deed in blank.

Douglas testified that he paid a Mountain Home attorney to make the first correction deed, and that he went back to the same attorney to have the second correction deed made in July. Douglas recorded both July deeds, from himself and wife to the Van Schaiks and from the Van Schaiks to the Schneiders, and paid for same. Admittedly, Douglas never had any conversation or transactions with Schneider prior to the July correction deed, nor did he advise appellees that he had recorded these instruments.

Jim Gibson, who was engaged in the real estate business in Mountain Home in 1958, handled the Schneider purchase. Gibson testified that he represented the property line to be "just short" of the creek; subsequently, the witness said that he did not remember just what he told Schneider. He stated that sometime after the April deed, Douglas told him that part of his (ap-

pellant's) own land had been deeded, for the deed named the creek as the boundary. Gibson stated that he believed that he delivered the July Van Schaik-to-Schneider deed to the latter.

Schneider testified that when he purchased the lands he was of the opinion that he was buying all lands on the west side of the creek. He stated that he never had any knowledge of any deeds, affecting his title, after the correction deed of April 23, 1958, and that he did not know of any claim that anyone was making to this land until the previous fall when he was advised that Douglas and some surveyers were on his property, and, upon making inquiry, was told by Douglas that a mistake had been made in the deeds, and ''you don't even know what property you got.'' Thereupon, Schneider consulted his attorney.

The Chancellor found that the Schneiders, relying on the record title, and in good faith, purchased the lands in question from the Van Schaiks on April 25, 1958; that the correction deed from Douglas and wife to Van Schaik and wife, of July 3, was executed without the agreement of the Van Schaiks; that Schneider and wife had no knowledge of any July correction deed from the Van Schaiks, and that such an instrument was never delivered to, or accepted by them. Of course, the trial court had the advantage of observing every witness that testified, and thus was in a position to know the reaction of each witness to the questions propounded. Here, people were testifying about events which had happened a number of years earlier, and accordingly, the trier of the facts had a particular advantage (over this court) in observing how they seemed to recall these past events, i. e., whether they were positive—or doubtful—sure—or unsure. However, we do not deem it necessary to discuss the law relative to the effectiveness (or lack of it) of an undelivered deed, or the law relating to the recording of deeds where delivery is not established, for we are of the opinion that the record reflects that the Schneiders purchased the lands in ques-

tion in good faith, and had no notice that Mr. and Mrs. Douglas were claiming any part of these lands. Appellants controvert this finding by pointing out that the original contract between Van Schaik and Schneider, entered into on April 15, 1958, provided that the Schneiders would purchase from the Van Schaiks:

"All acreage covered in deed from Lee Douglas and Wilma Douglas to Fred Van Schaik and Katherine J. Van Schaik, located in Independence Acres tract as platted by Surveyor of Baxter County, as recorded in Surveyor's record "C" at page 261 of Baxter County Arkansas."

It is undisputed that the Schneiders never saw the instruments or documents referred to, and we do not agree that, under the circumstances of this case, the failure of the Schneiders to go to the courthouse and check these records deprives them of the status of innocent purchasers. The Schneiders did what every purchaser should do before buying property. They employed an attorney to examine the abstract of title; they were aware of the correction deed given by Mr. and Mrs. Douglas to Mr. and Mrs. Van Schaik on April 23 (two days before they completed the purchase), and that it had been given to correct an error in an earlier deed. There was no reason for them to suspect any error in the correction deed, and accordingly no reason to "look behind" that deed. The description by which the property was conveyed to them is exactly the same as in that correction deed. The Schneiders only paid their money after receiving the attorney's opinion that Van Schaik and wife held a good and merchantable title to the lands being purchased.

Really, it would appear that both the Schneiders and Douglases were innocent parties, but Douglas' error actually was responsible for the situation that arose. Appellants state, "Douglas simply acted as a go-between at the request of Van Schaik, to save Van Schaik some money, and is being penalized under the court's order

because he just happened to own the adjoining land." It might be pointed out, however, that Mr. Douglas' efforts were not entirely a matter of being "neighborly," or "for accommodation," since he testified that he purchased the property from Mrs. Parker for either $900.00 or $1,000.00, and sold it to the Van Schaiks for $1,500.00. Accordingly, he made $500.00 or $600.00 on the transaction.

We are unable to say that the Chancellor's findings were against the preponderance of the evidence.

Affirmed.